IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

EOD
01/08/2016

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| **SURESH KOOSYIAL** § | Case No. 14-10382 | |
| xxx-xx-1867 § | | |
| § | | |
| § | | |
| Debtor § | Chapter 7 | |
| COMMONWEALTH LAND TITLE § | | |
| INSURANCE COMPANY § | | |
| § | | |
| Plaintiff § | | |
| § | | |
| v. § | Adversary No. 14-1009 | |
| § | | |
| SURESH KOOSYIAL § | | |
| § | | |
| Defendant § | | |

## MEMORANDUM OF DECISION
## REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ON THIS DATE the Court considered the Motion for Summary Judgment filed by the Plaintiff, Commonwealth Land Title Insurance Company ("Commonwealth" or "Plaintiff"), in the above-referenced adversary proceeding. The Defendant, Suresh Koosyial ("Defendant" or "Debtor"), failed to file a response in opposition to the Motion filed by the Plaintiff.[1] The Plaintiff's complaint seeks: (1) a judgment for an alleged debt of $112,035.33, together with interest, costs, and an award of reasonable and

---

[1] The Defendant filed his own Motion for Summary Judgment [dkt #14], which is the subject of a separate memorandum of opinion. However, he filed no response in opposition to the Plaintiff's motion, as required by Local District Court Rule CV-56 which was incorporated into this adversary proceeding through the Scheduling Order issued on March 16, 2015.

necessary attorney's fees; and (2) a determination that such a debt owed by the Defendant to the Plaintiff is nondischargeable as a liability for obtaining money or property by false pretenses, a false representation, or actual fraud.

Upon due consideration of the pleadings, the proper summary judgment evidence submitted by the parties, and the relevant legal authorities, the Court concludes that the Plaintiff has failed to demonstrate the existence of one or more essential elements of its claim, thus precluding any judgment as a matter of law that any debt owed to it by the Defendant is nondischargeable under 11 U.S.C. §523(a)(2)(A).[2]

## Factual and Procedural Background[3]

The material facts giving rise to this action are not in dispute. In 2003, the Defendant, Suresh Koosyial, owned certain improved real property located at 101-06 81st Street, Ozone Park, Queens, New York (the "Queens Property").[4] On November 4, 2003, the Defendant executed a promissory note in the amount of $100,000.00 payable to Citibank, N.A. ("Citibank").[5] To secure the payment of that promissory note, the

---

[2] This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

[3] The facts presented are those the Court believes to be uncontested between the parties and are presented only as a general factual background to the legal claims asserted in the case. This section is not intended to resolve any disputed or contested facts.

[4] *See* Complaint, dkt. #1 at ¶ 10, and Answer, dkt. #7 at ¶ 10.

[5] *See* Complaint, dkt. #1 at ¶ 11, and Answer, dkt. #7 at ¶ 11.

Defendant granted Citibank a mortgage on the Queens Property.[6]

On or about May 12, 2004, the Defendant sold the Queens Property to Kishore C. and Chandrawatie Charles via special warranty deed.[7]  As a component of that sale, the Defendant executed an affidavit "to induce Accredited Home Lenders to accept a mortgage on or a conveyance of said premises and to induce American Pioneer Title Insurance Company/Fidelity National Title Insurance Company to issue a policy of title insurance . . . covering said premises."[8]  That affidavit contained representations by the Defendant including that the conveyance "is not done for the purpose of defrauding any creditors, liens or any other party who may claim an interest in the subject premises" and that "I/we have not entered into any private agreements with the Purchaser, seller, lender, additional third party regarding financing, mortgages, purchase, sale, refinance agreements which may affect our current mortgage, this transaction or my/our ability to obtain financing for this property."[9]

For unexplained reasons, the title examination conducted prior to the closing of the May 2004 sales transaction failed to disclose the existence of the Defendant's mortgage with Citibank.  As a result, no portion of the proceeds arising from the May 2004 sales transaction was tendered in satisfaction of the mortgage held by Citibank against the

---

[6] *Id.*

[7] Plaintiff's Ex. B.

[8] Plaintiff's Ex. C.

[9] *Id.*

Queens Property.[10]

The Queens Property was subsequently sold by Mr. and Mrs. Charles to Mohammed A. Hadi and Mohammed L. Kahn ("Hadi & Kahn"). As a part of that sales transaction, the Plaintiff underwrote an owner's policy of title insurance for the benefit of Hadi & Kahn as the purchasers of the Queens Property, under which the Plaintiff insured for the benefit of Hadi & Kahn that the Queens Property was free of any liens and encumbrances. Hadi & Kahn were still the record title holders in February 2009 when, after the Defendant had defaulted on his note payments, Citibank initiated a judicial foreclosure proceeding in the Supreme Court of Queens County, New York against all affected parties, including the Defendant and Hadi & Kahn, seeking to foreclose its mortgage lien against the Queens Property.[11]

Hadi & Kahn subsequently made a claim under their title insurance policy issued by the Plaintiff and the Plaintiff was contractually bound to provide the purchasers with a defense to the Citibank lawsuit.[12] Ultimately, the Plaintiff, in providing a defense for Hadi & Kahn, reached a settlement with Citibank whereby the Plaintiff paid the sum of $112,035.33 to Citibank in October 2010 and thereby received an assignment of the

---

[10] The deed evidencing the transfer of the Queens Property by the Defendant to Mr. and Mrs. Charles was recorded in the Office of the City Register of the City of New York on October 8, 2004 as CRFN No. 2004000628976. *See* Plaintiff's Ex. B.

[11] See *Statement of Undisputed Facts* ¶ 10 contained in Plaintiff's Motion.

[12] *Id*. at ¶ 11.

Citibank note and mortgage.[13]  The Plaintiff is the current holder of the original 2003 Citibank note executed by the Defendant.[14]

After receiving the assignment of the note and mortgage from Citibank, the Plaintiff filed a state court lawsuit against the Defendant in March 2014 in the Supreme Court of Queens County, New York, seeking to recover from the Defendant the amounts that it had paid to Citibank.[15]  Prior to any resolution of that state court lawsuit, the Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court.

On November 6, 2014, the Plaintiff filed the present complaint against the Defendant, contending that:  (1) representations made by the Defendant in the 2004 sales transaction to Mr. and Mrs. Charles regarding existing encumbrances were knowingly false; (2) the Defendant is thereby liable for the $112,035.33 which the Plaintiff eventually paid in 2010 under its title policy obligations to Hadi & Kahn, as subsequent purchasers of the Queens Property; and (3) such 2004 false representations render the alleged debt nondischargeable under §523(a)(2)(A).  On October 2, 2015, the Plaintiff filed its motion for summary judgment — arguing that, as a matter of law, it is entitled to judgment on its complaint.  No response in opposition to the Plaintiff's motion for summary judgment has been filed by the Defendant.

---

[13]  Plaintiff's Ex. D.

[14]  See *Statement of Undisputed Facts* ¶ 13 contained in Plaintiff's Motion.

[15]  Plaintiff's Ex. E.

**Discussion**

*Summary Judgment Standards and Process*

The Plaintiff brings its Motion for Summary Judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056.[16] That rule incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[17] The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.[18] The moving party asserting that a fact cannot be genuinely disputed must support that assertion by:

> (A) citing to particular parts of the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials do not establish the . . . presence of a genuine

---

[16] Pursuant to the scheduling order issued in this adversary proceeding, motions for summary judgment are required to comply in format and content with Local District Court Rule CV-56 and such motions shall be decided under the procedures stated therein.

[17] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), *quoting* FED. R. CIV. P. 56(c).

[18] *Id.* at 323.

      dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c).

      The manner in which the necessary summary judgment showing can be made depends upon which party will bear the burden of persuasion at trial. If, as in this case, the burden of persuasion is on the moving party, "that party must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial."[19]

      If a summary judgment motion is properly supported, a party opposing the motion may not merely rest upon the contents of its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary.[20] The substantive law will identify which facts are material.[21] In its objection, the non-movant must show more than a "mere disagreement" between the parties,[22] or that there is merely "some metaphysical doubt as to the material facts."[23] Neither are unsubstantiated, conclusory assertions in the response sufficient to raise a genuine issue of material fact.[24] However, "[t]he issue of material

---

    [19] *Id.* at 331.

    [20] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986), *citing* FED. R. CIV. P. 56(e).

    [21] *Id.*

    [22] *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993).

    [23] *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

    [24] *Jacobs v. City of Port Neches,* 7 F.Supp.2d 829, 833 (E.D. Tex. 1998) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

fact which must be present in order to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[25]

The record presented is reviewed in the light most favorable to the non-moving party.[26] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"[27] Further, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[28]

In addition to the Rule 56 procedures outlined above, the requirements of Local District Court Rule CV-56 were also invoked by the Court for the content and determination of summary judgment motions.[29] That rule, in relevant part, directs a movant to include a Statement of Undisputed Material Facts and to support such a statement with "appropriate citations to proper summary judgment evidence."[30] It directs

---

[25] *Anderson*, 477 U.S. at 248-49.

[26] *Matsushita,* 475 U.S. at 587.

[27] *Id.* at 587, *citing First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

[28] *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

[29] *See "Scheduling Order Arising from Management Conference"* entered in this case on March 16, 2015 [dkt #12], *citing and attaching* E.D. TEX. LOCAL R. CV–56.

[30] "The phrase 'appropriate citations' means that any excerpted evidentiary materials that are attached to the motion or the response should be referred to by page and, if possible, by line."

a respondent that any response "should be supported by appropriate citations to proper summary judgment evidence."[31] With regard to the disposition of the motion, the rule states:

> (c) **Ruling**. In resolving the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, *except to the extent* that such facts are controverted in the response filed in opposition to the motion, as supported by proper summary judgment evidence. The court will not scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment.[32]

Notwithstanding that rule, the Defendant in this instance has filed no response in opposition to the Plaintiff's summary judgment motion.[33]

However, "[t]he failure of a party to oppose a motion for summary judgment alone does not justify the granting of summary judgment . . . [because] the court must assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." *Swank v. Scottsdale Ins. Co.*, 2011 WL 3625595, at *4 (W.D. La. June 7, 2011) (citing *Vermont

---

*Broussard v. Oryx Energy Co.*, 110 F.Supp.2d 532, 536 (E.D. Tex. 2000) (*citing* E. D. TEX. LOCAL R. CV-56(d)).

[31] E.D. TEX. LOCAL R. CV–56(b).

[32] E.D. TEX. LOCAL R. CV–56(c) (emphasis added).

[33] Though no response in opposition to the Plaintiff's motion was filed by the Defendant, the Court acknowledges that the Defendant filed its own independent Motion for Summary Judgment, which included his own statement of undisputed facts and attached exhibits. However, "[o]n cross-motions for summary judgment, the court examines each party's motion independently viewing the evidence and inferences in the light of most favorable to the nonmoving party." *United States v. Bros. Enterprises, Inc.*, 2015 WL 4039848, at *4 (E.D. Tex., July 1, 2015)(*citing White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005)).

*Teddy Bear Co., Inc. v. 1–800 Beargram Co.,* 373 F.3d 241 (2nd Cir. 2004)). "If the moving party fails to discharge this burden, summary judgment must be denied—even if the nonmoving party has not responded to the motion." *John v. State of La. (Bd. of Trustees for State Colleges & Universities*), 757 F.2d 698, 708 (5th Cir. 1985). Upon a review of the summary judgment record submitted by the Plaintiff, the Court concludes that the Plaintiff has failed to demonstrate that it is entitled to judgment as a matter of law because its summary judgment evidence fails to establish each element required for a determination of nondischargeability under 11 U.S.C. §523(a)(2)(A). Accordingly, summary judgment for the Plaintiff must be denied, even in the absence of any response in opposition by the Defendant.

*Nondischargeability Under 523(a)(2)(A): Debt Arising by False Pretenses, False Representation or Actual Fraud*

The Plaintiff's Complaint seeks a determination that the debt owed to it should be excepted from discharge under §523(a)(2)(A) as a debt obtained by false pretenses, a false representation or actual fraud. 11 U.S.C. §523(a)(2)(A) of the Bankruptcy Code provides that:

> a discharge under §727 of this title does not discharge an individual debtor from any debt for money, property, or services, . . . to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

Section 523(a)(2)(A) encompasses similar but distinct causes of action. Though

**-10-**

other circuits have applied a uniform standard to all § 523(a)(2)(A) actions,[34] the Fifth Circuit has distinguished the elements of "actual fraud" from those involving "false pretenses and false representations." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995). The distinction recognized by the Fifth Circuit appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event as opposed to a representation regarding a past or existing fact. *Bank of Louisiana v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir. 1991) ["In order . . . to be a false representation or false pretense under § 523(a)(2), the false representations and false pretenses [must] encompass statements that falsely purport to depict current or past facts. [A debtor's] promise . . . related to [a] future action [which does] not purport to depict current or past fact . . . therefore cannot be defined as a false representation or a false pretense"].[35] Since the purportedly false representations made by the Defendant in

---

[34] *See, e.g., Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991); *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987). Though some bankruptcy courts outside of the Fifth Circuit have cited the decision of the United States Supreme Court in *Field v. Mans*, 516 U.S. 59 (1995), in support of their proposition that all of the §523(a)(2)(A) actions are governed by the elements for actual fraud, *see, e.g., AT&T Universal Card Services v. Ellingsworth (In re Ellingsworth)*, 212 B.R. 326 (Bankr. W.D. Mo. 1997); *AT&T Universal Card Services v. Alvi (In re Alvi),* 191 B.R. 724 (Bankr. N.D. Ill. 1996); the Supreme Court in that case was actually distinguishing the language used in §523(a)(2)(A) from that utilized in §523(a)(2)(B) in order to determine the degree of reliance necessary above mere reliance in fact in order to exempt a debt from discharge under (a)(2)(A). Since the Supreme Court specifically refused to even apply their direct holding regarding the degree of reliance in actual fraud cases to cases of false pretense or false representation, 516 U.S. at 71, n. 8, the statement that the Court erased all distinctions between the three (a)(2)(A) actions strains credibility.

[35] Though some in this circuit have rejected these parallel tests as a distinction without a difference and proceeded with a unitary approach to the problem, *see In re Melancon*, 223 B.R. 300, 308 (Bankr. M.D. La. 1998), this Court feels compelled to recognize and attempt to apply the distinction drawn by the circuit court.

this case pertained to an existing fact *[i.e., that the property was being conveyed free of any lien or encumbrance]*, the Plaintiff's nondischargeability action is properly characterized as one based upon false representation or false pretenses, and cannot be properly characterized in this Circuit as an action based on actual fraud.

While "false pretenses" and a "false representation" both involve intentional conduct intended to create and foster a false impression, the distinction is that a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement. *See FNFS, Ltd. v. Harwood (In re Harwood),* 404 B.R. 366, 389 (Bankr. E.D. Tex. 2007); *Wallace v. Davis (In re Davis)*, 377 B.R. 827, 834 (Bankr. E.D. Tex. 2007). "In order for the court to deny discharge of a debt under section 523(a)(2)(A) on the basis that the debt was procured by false pretenses or a false representation, the plaintiff must prove by a preponderance of the evidence that the debtor made representations that were (1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party." *Cardwell v. Gurley,* 2011 WL 6338813, at *6 (E.D. Tex., Dec. 19, 2011) (*citing RecoverEdge,* 44 F.3d at 1293).[36]

---

[36] A debt may also be declared nondischargeable if it was obtained by actual fraud. To have a debt excepted from discharge pursuant to the "actual fraud" provision in § 523(a)(2)(A), an objecting creditor must prove that (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained losses as a proximate result of the representations. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995), *as modified by the United States Supreme Court decision of Field v. Mans*, 516 U.S. 59 (1995) [regarding the proper standard of reliance].

The degree of reliance required under §523(a)(2)(A) is actual and justifiable reliance. *Field v. Mans*, 516 U.S. 59, 70-71 (1995). "The 'actual reliance' standard requires little of a creditor, who must prove only that he in fact relied on representations of the debtor." *Manheim Automotive Financial Services, Inc. v. Hurst (In re Hurst)*, 337 B.R. 125, 134 (Bankr. N.D. Tex. 2005). Justifiable reliance does not require a plaintiff to demonstrate reasonableness nor does it impose a duty to investigate unless the falsity is readily apparent. "Whether a party justifiably relies on a misrepresentation is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff, not by an objective standard." *Guion v Sims (In re Sims)*, 479 B.R. 415, 425 (Bankr. S.D. Tex. 2012) (*citing Field v. Mans*, 516 U.S. at 71). "A party may justifiably rely on a misrepresentation even when he could have ascertained its falsity by conducting an investigation." *Sanford Institution for Savings v. Gallo*, 156 F.3d 71, 74 (1st Cir. 1998). Thus, "[j]ustifiable reliance requires evidence that the plaintiff actually relied on the false representations and that its reliance was justified under the circumstances." *Husky Intern. Elecs., Inc. v. Ritz (In re Ritz)*, 513 B.R. 510, 520 (S.D. Tex. 2014), *aff'd*, 787 F.3d 312 (5th Cir.), *cert. granted*, 136 S. Ct. 445 (2015).

The Plaintiff moves for judgment as a matter of law on its claim under 11 U.S.C. §523(a)(2)(A). Yet the Plaintiff fails to bring any summary judgment evidence to the Court to establish that any false representation contained in the 2004 sales transaction documents was intentionally made by the Defendant for the precise purpose of deceiving

-13-

Mr. and Mrs. Charles as the purchasers. *General Elec. Capital Corp. v Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005) [holding that "an honest belief, even if unreasonable, that a representation is true and that the speaker has information to justify it does not amount to an intent to deceive."]. Without such evidence, an essential element of the Plaintiff's case under §523(a)(2)(A) is absent.

The summary judgment evidence submitted by the Plaintiff further fails to establish its reliance upon any of the Defendant's representations made in 2004. The undisputed facts establish that the Plaintiff was not involved with the sale of the Queens Property in 2004. Thus, there could have been no direct reliance exhibited by the Plaintiff at the time the representations were made. However, the Plaintiff fails to tender any summary judgment evidence to establish proof of actual reliance by any predecessor-in-interest. There is no summary judgment evidence that Mr. and Mrs. Charles, as the actual purchasers of the Queens Property in 2004, relied on any representation by the Defendant regarding the existence of mortgages. Thus, the failure of the Plaintiff to present any credible evidence of actual reliance upon the Defendant's representations also precludes the granting of summary judgment on its § 523(a)(2)(A) claim.

Finally, the Plaintiff has failed to tender summary judgment evidence to establish that it sustained its purported loss as a proximate result of the Defendant's representations. This is another critical element of a §523(a)(2)(A) claim. As one court has concisely stated,

> If the damages giving rise to the judgment proximately arose from some other cause than the misrepresentation, the debt can not be deemed to be one for property obtained by fraud. . . . Only debts proximately arising from the obtaining of property by fraud are nondischargeable under §523(a)(2)(A). *United States v. Spicer,* 57 F.3d 1152, 1157 (D.C. Cir. 1995), *cert. denied,* 516 U.S. 1043, 116 S.Ct. 701, 133 L.Ed.2d 658 (1996). It is not enough to show that false representations were made; [the plaintiff] must also show that her damage ***flowed directly*** from the misrepresentations. *McCrory v. Spigel (In re Spigel),* 260 F.3d 27 (1st Cir. 2001). . . . Proximate causation—loss or damage to the creditor "as a proximate result of" the debtor's misrepresentation—is an element that must be proved in order to establish nondischargeability under § 523(a)(2)(A).

*Willcox v. Carpenter (In re Carpenter)*, 453 B.R. 1, 7 (Bankr. D.D.C. 2011) (emphasis added).

The Plaintiff conveniently chooses to ignore the fact that there were two relevant transactions in this chain of title and that the Defendant had nothing to do with any aspect of the second sales transaction which occurred in 2006. The operative failure which proximately caused any loss to the Plaintiff occurred during this second sales transaction — the sale from Mr. and Mrs. Charles to Hadi & Kahn — in which the Plaintiff became obligated to defend the chain of title to the Queens Property due to the issuance of a title insurance policy for the benefit of Hadi & Kahn and during which, unfortunately for the Plaintiff, the existence of the Citibank mortgage was again ignored. Clearly a failure of due diligence occurred in the second transaction — resulting in liability for the Plaintiff as a result of its contractual warranty that, as of the time of the second conveyance, the

property was being conveyed to its insureds free and clear of liens and encumbrances. The Plaintiff offers no summary judgment evidence to establish that the duty imposed upon it to satisfy the Citibank debt was caused by any false statement of the Defendant occurring years before, or otherwise to negate the conclusion that the superseding cause of the Plaintiff's duty to respond to the existence of the Citibank mortgage, and its necessity to incur the debt that it incurred, was its contractual obligation arising from the issuance of the title policy. Without any summary judgment evidence of proximate cause, summary judgment cannot be rendered for the Plaintiff on its § 523(a)(2)(A) claim.

### Conclusion

Accordingly, upon due consideration of the pleadings, the proper summary judgment evidence submitted, the material facts admitted to exist under Fed. R. Bankr. P. 56 and E.D. TEX. LOCAL R. CV–56(c), the relevant legal authorities, and for the reasons set forth herein, the Court concludes that the Plaintiff has failed to meet its burden to demonstrate that it is entitled to judgment as a matter of law because its summary judgment evidence fails to establish each element required for a determination of nondischargeability under 11 U.S.C. §523(a)(2)(A). Accordingly, the Court concludes that the motion for summary judgment filed by the Plaintiff, Commonwealth Land Title Insurance Company, in the above-referenced adversary proceeding must be denied. An appropriate order will be entered which is consistent with this opinion.

Signed on 01/08/2016

*/s/ Bill Parker*

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE