## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **SURESH KOOSYIAL** | § | Case No. 14-10382 |
| xxx-xx-1867 | § | |
| | § | |
| | § | |
| Debtor | § | Chapter 7 |

**EOD**
01/08/2016

| | | |
|---|---|---|
| COMMONWEALTH LAND TITLE | § | |
| INSURANCE COMPANY | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 14-1009 |
| | § | |
| SURESH KOOSYIAL | § | |
| | § | |
| Defendant | § | |

## MEMORANDUM OF DECISION
## REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ON THIS DATE the Court considered the Motion for Summary Judgment and

Incorporated Brief in Support, filed by the Defendant, Suresh Koosyial ("Defendant" or

"Debtor"), in the above-referenced adversary proceeding.  The Plaintiff, Commonwealth

Land Title Insurance Company ("Commonwealth" or "Plaintiff") failed to file a response

in opposition to the Motion filed by the Defendant.[1]  The Plaintiff's complaint seeks:  (1)

a judgment for an alleged debt of $112,035.33, together with interest, costs, and an award

of reasonable and necessary attorney's fees; and (2) a determination that such a debt owed

---

[1] The Plaintiff filed its own Motion for Summary Judgment [dkt #13], but filed no response in opposition to the Defendant's motion, as required by Local District Court Rule CV-56 which was incorporated into this adversary proceeding through the Scheduling Order issued on March 16, 2015.

by the Defendant to the Plaintiff is nondischargeable as a liability for obtaining money or property by false pretenses, a false representation, or actual fraud.  The Defendant's Motion for Summary Judgment (hereafter "Defendant's Motion") primarily asserts that the admitted summary judgment evidence either fails to establish, or outright negates, the existence of one or more essential elements of the Plaintiff's claim under § 523(a)(2)(A).

Upon due consideration of the pleadings, the proper summary judgment evidence submitted by the parties, and the relevant legal authorities, the Court concludes that the Defendant has demonstrated that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law that any debt that he owes to the Plaintiff is dischargeable.[2]

## Factual and Procedural Background[3]

The relevant facts giving rise to this action are not in dispute.  In 2003, the Defendant, Suresh Koosyial, owned certain improved real property located at 101-06 81st Street, Ozone Park, Queens, New York (the "Queens Property").[4]  On November 4, 2003, the Defendant executed a promissory note in the amount of $100,000.00 payable to

---

[2] This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

[3] The facts presented are those the Court believes to be uncontested between the parties and are presented only as a general factual background to the legal claims asserted in the case.  This section is not intended to resolve any disputed or contested facts.

[4] *See* Complaint, dkt. #1 at ¶ 10, and Answer, dkt. #7 at ¶ 10.

Citibank, N.A. ("Citibank").[5]  To secure the payment of that promissory note, the

Defendant granted Citibank a mortgage on the Queens Property.[6]

On or about May 12, 2004, the Defendant sold the Queens Property to Kishore C.

and Chandrawatie Charles via special warranty deed.[7]  As a component of that sale, the

Defendant executed an affidavit "to induce Accredited Home Lenders to accept a

mortgage on or a conveyance of said premises and to induce American Pioneer Title

Insurance Company/Fidelity National Title Insurance Company to issue a policy of title

insurance . . . covering said premises."[8]  That affidavit contained representations by the

Defendant including that the conveyance "is not done for the purpose of defrauding any

creditors, liens or any other party who may claim an interest in the subject premises" and

that "I/we have not entered into any private agreements with the Purchaser, seller, lender,

additional third party regarding financing, mortgages, purchase, sale, refinance

agreements which may affect our current mortgage, this transaction or my/our ability to

obtain financing for this property."[9]

Unbeknownst to anyone,[10] the title examination conducted prior to the closing of

the May 2004 sales transaction failed to disclose the existence of the Defendant's

---

[5]  *See* Complaint, dkt. #1 at ¶ 11, and Answer, dkt. #7 at ¶ 11.

[6]  *Id.*

[7]  Defendant's Ex. H at pp. 3-5.

[8]  Defendant's Ex. G.

[9]  *Id.*

[10]  *See, e.g.*, Defendant's Ex. K.

mortgage with Citibank.  The Defendant was unaware that there was an error in the closing documents or that a significant portion of the proceeds arising from the May 2004 sales transaction should have been tendered to Citibank in satisfaction of the mortgage.[11] The only summary judgment evidence before the Court indicates that he merely signed the documentation that was placed before him at the title company.[12]  The sale of the Queens Property by the Defendant to Kishore C. and Chandrawatie Charles closed under the supervision of Elite Settlement Agency, Inc., without any satisfaction of the mortgage held by Citibank against the Queens Property.[13]

The Queens Property was subsequently sold by Mr. and Mrs. Charles to Mohammed A. Hadi and Mohammed L. Kahn ("Hadi & Kahn").  That sale transaction also resulted in the procurement of a title insurance policy from the Plaintiff for the benefit of Hadi & Kahn as the purchasers of the Queens Property, under which the Plaintiff insured for the benefit of Hadi & Kahn that the Queens Property was free of any liens and encumbrances.[14]  Hadi & Kahn were still the record title holders in February 2009 when, after the Defendant had defaulted on his note payments, Citibank initiated a

---

[11] *Id.*

[12] *Id.*  The Defendant further testified that he thought the Citibank loan was unsecured.  Though clearly wrong, his mistaken impression regarding the status of his indebtedness to Citibank is corroborated by the fact that he continued to pay installment payments on the Citibank note for four additional years after the sale of the Queens Property to Mr. and Mrs. Charles.  *Id.* and Defendant's Ex. A at p. 6.

[13] The deed evidencing the transfer of the Queens Property by the Defendant to Mr. and Mrs. Charles was recorded in the Office of the City Register of the City of New York on October 8, 2004 as CRFN No. 2004000628976.  *See* Defendant's Ex. H at pp. 1-2.

[14] Defendant's Ex. F at ¶ 8.

judicial foreclosure proceeding in the Supreme Court of Queens County, New York against all affected parties, including the Defendant and Hadi & Kahn, seeking to foreclose its mortgage lien against the Queens Property.[15]

Hadi & Kahn subsequently made a claim under their title insurance policy issued by the Plaintiff.[16]  A subsequent investigation by the Plaintiff revealed that, at least as to the Hadi & Kahn purchase, the existence of the mortgage had been reported by National Land Services, LLC to Elite Settlement Agency, Inc., the title policy issuing agent for the Plaintiff.[17]  Rather than working its way up the chain of parties involved in prior sales transactions involving the Queens Property to locate the party responsible for the payment of the Citibank obligation, Elite Settlement simply issued a title policy regarding the property.  The summary judgment evidence indicates that National Land Services, as the apparent closing agent, simply assumed from its receipt of that title policy from Elite that the Citibank mortgage had been satisfied, and it proceeded to close the sales transaction to Hadi & Kahn without the actual satisfaction of the Citibank obligation.[18]  The Plaintiff subsequently accused Elite of failing to uncover the existing Citibank mortgage.[19]

After the initiation of the judicial foreclosure proceeding by Citibank, the Plaintiff,

---

[15]  Defendant's Ex. A.

[16]  Defendant's Ex. D.

[17]  Defendant's Ex. C.

[18]  *Id.*

[19]  Defendant's Ex. D.

in providing a defense for Hadi & Kahn, reached a settlement with Citibank whereby the Plaintiff paid the sum of $112,035.33 to Citibank in October 2010 and thereby received an assignment of the Citibank note and mortgage.[20]  The Plaintiff is the current holder of the original 2003 Citibank note executed by the Defendant.[21]

After receiving the assignment of the note and mortgage from Citibank, the Plaintiff filed a state court lawsuit against the Defendant in March 2014 in the Supreme Court of Queens County, New York, seeking to recover from the Defendant the amounts that it had paid to Citibank.[22]  Prior to any resolution of that state court lawsuit, the Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court.

On November 6, 2014, the Plaintiff filed the present complaint against the Defendant, contending that representations made by the Defendant in the 2004 sales transaction to Mr. and Mrs. Charles regarding existing encumbrances were knowingly false and that the Defendant is thereby liable for the $112,035.33 which the Plaintiff eventually paid in 2010 under its title policy obligations to Hadi & Kahn, as subsequent purchasers of the Queens Property, and that such 2004 false representations render the

---

[20]  Defendant's Ex. F at ¶ 11-12.  The "Assignment of Mortgage" by Citibank to the Plaintiff identifies the Defendant Koosyial as the mortgagor and describes the mortgage as "recorded on May 3, 2004 with the City Register of the City of New York at CRFN 2004000273646, securing real property located at 101-06 81st Street."  Defendant's Ex. E at p. 3.

[21]  Defendant's Ex. F at ¶ 12.

[22]  Defendant's Ex. F.

**-6-**

alleged debt nondischargeable under §523(a)(2)(A).

On October 2, 2015, the Defendant filed his motion for summary judgment —
arguing that, as a matter of law, he is entitled to judgment on the Plaintiff's complaint
because there is no genuine issue of material fact regarding the Defendant's knowledge in
2004 and that the undisputed material facts negate one or more of the elements required
for the Plaintiff to prevail on its claim.

Under LBR 7056 and the Scheduling Order issued in this case, "any response in
opposition to a motion for summary judgment must be filed within twenty-eight (28) days
of the filing of the motion."[23] Notwithstanding such deadline, no response in opposition to
the Defendant's motion for summary judgment has been filed by the Plaintiff.

## Discussion

*Summary Judgment Standards and Process*

The Defendant brings his Motion for Summary Judgment in this adversary
proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056.[24]   That rule
incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment
shall be rendered "if the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show that there is no genuine issue

---

[23]  LBR 7056(b) and ¶ 3(B) of the "Scheduling Order Arising from Initial Management
Conference" entered in this adversary proceeding on March 16, 2015.

[24]  Pursuant to the scheduling order issued in this adversary proceeding, motions for summary
judgment are required to comply in format and content with Local District Court Rule CV-56 and such
motions shall be decided under the procedures stated therein.

as to any material fact and that the moving party is entitled to judgment as a matter of law."[25]  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.[26]  The moving party asserting that a fact cannot be genuinely disputed must support that assertion by:

> (A) citing to particular parts of the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c).

The manner in which the necessary summary judgment showing can be made depends upon which party will bear the burden of persuasion at trial.  Since, in the context of the Defendant's Motion, the burden of persuasion at trial rests upon the non-moving party, "the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways.  First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim.  Second, the

---

[25] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), *quoting* FED. R. CIV. P. 56(c).

[26] *Id.* at 323.

moving party may demonstrate to the Court that the non-moving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[27]

   If a summary judgment motion is properly supported, a party opposing the motion may not merely rest upon the contents of its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary.[28]  The substantive law will identify which facts are material.[29]  In its objection, the non-movant must show more than a "mere disagreement" between the parties,[30] or that there is merely "some metaphysical doubt as to the material facts."[31]  Neither are unsubstantiated, conclusory assertions in the response sufficient to raise a genuine issue of material fact.[32]  However, "[t]he issue of material fact which must be present in order to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence;  rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to

---

   [27] *Celotex*, 477 U.S. at 322-323 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)) (internal citations omitted).

   [28] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986), *citing* FED. R. CIV. P. 56(e).

   [29] *Id.*

   [30] *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993).

   [31] *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

   [32] *Jacobs v. City of Port Neches,* 7 F.Supp.2d 829, 833 (E.D. Tex. 1998) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

require a jury or judge to resolve the parties' differing versions of the truth at trial."[33]

The record presented is reviewed in the light most favorable to the non-moving party.[34]  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"[35]  Further, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[36]

In addition to the Rule 56 procedures outlined above, the requirements of Local District Court Rule CV-56 were also invoked by the Court for the content and determination of summary judgment motions.[37]  That rule, in relevant part, directs a movant to include a Statement of Undisputed Material Facts and to support such a statement with "appropriate citations to proper summary judgment evidence."[38]  It directs a respondent that any response "should be supported by appropriate citations to proper

---

[33]  *Anderson*, 477 U.S. at 248-49.

[34]  *Matsushita,* 475 U.S. at 587.

[35]  *Id.* at 587, *citing First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

[36]  *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

[37]  *See "Scheduling Order Arising from Management Conference"* entered in this case on March 16, 2015 [dkt #12], *citing and attaching* E.D. TEX. LOCAL R. CV–56.

[38]  "The phrase 'appropriate citations' means that any excerpted evidentiary materials that are attached to the motion or the response should be referred to by page and, if possible, by line." *Broussard v. Oryx Energy Co.*, 110 F.Supp.2d 532, 536 (E.D. Tex. 2000) (*citing* E. D. TEX. LOCAL R. CV-56(d)).

summary judgment evidence."[39]  With regard to the disposition of the motion, the rule states:

> (c) **Ruling**.  In resolving the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, *except to the extent* that such facts are controverted in the response filed in opposition to the motion, as supported by proper summary judgment evidence.  The court will not scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment.[40]

Yet the Plaintiff in this instance has filed no response whatsoever in opposition to the Defendant's summary judgment motion nor has the Plaintiff tendered any responsive summary judgment evidence with regard to the issues raised therein.  Now, "[t]he failure of a party to oppose a motion for summary judgment alone does not justify the granting of summary judgment . . . [because] the court must assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law."  *Swank v. Scottsdale Ins. Co.*, 2011 WL 3625595, at *4 (W.D. La. June 7, 2011) (citing *Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co.,* 373 F.3d 241 (2nd Cir. 2004)).  However, while summary judgment may not be awarded by default based upon a non-movant's failure to respond, *Ford–Evans v. Smith,* 206 F. App'x. 332, 334 (5th Cir. 2006); *United States v. Wilson,* 113 F. App'x. 17, 18 (5th Cir. 2004), if the moving party carries the initial burden of demonstrating an absence of genuine issues of material fact and its entitlement to judgment as a matter of

---

[39]  E.D. Tex. Local R. CV–56(b).

[40]  E.D. Tex. Local R. CV–56(c) (emphasis added).

law if those facts are established,[41] the non-movant is "under an obligation to respond . . . in a timely fashion and to place before the court all materials it wishes to have considered when the court rules on the motion." *Enplanar, Inc. v. Marsh,* 11 F.3d 1284, 1293 n. 11 (5th Cir. 1994). When the moving party carries its initial burden and the non-movant fails to respond, a court may accept as true the material facts set forth in support of the unopposed motion for summary judgment. *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004); E.D. Tex. Loc. R. CV–56(c).

The Court concludes that the Defendant has met his initial burden to demonstrate an absence of any disputed material facts and his entitlement to judgment as a matter of law. He has tendered admissible summary judgment evidence to negate more than one essential element of the §523(a)(2)(A) claim asserted by the Plaintiff. Thus, the rules impose upon the Plaintiff the duty to respond to the Defendant's motion. No such response was filed.

Though no response in opposition to the Defendant's motion was filed by the Plaintiff, the Court acknowledges that the Plaintiff filed its own independent Motion for Summary Judgment, which included its own statement of undisputed facts and attached exhibits.[42] However, "[o]n cross-motions for summary judgment, the court examines each party's motion independently viewing the evidence and inferences in the light of

---

[41] "If the moving party fails to discharge this burden, summary judgment must be denied—even if the nonmoving party has not responded to the motion." *John v. State of La. (Bd. of Trustees for State Colleges & Universities*), 757 F.2d 698, 708 (5th Cir. 1985).

[42] Dkt. #13.

most favorable to the nonmoving party." *United States v. Bros. Enterprises, Inc.*, 2015 WL 4039848, at *4 (E.D. Tex., July 1, 2015)(*citing White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005)).[43]  Thus, the summary judgment evidence submitted by the Plaintiff in support of its own motion may be properly ignored in the evaluation of the Defendant's motion[44] and the Plaintiff's failure to controvert the material facts set forth in the Defendant's motion[45] mandates that such "facts as claimed and supported by admissible evidence by the [Defendant] are admitted to exist without controversy."[46]

*Nondischargeability Under 523(a)(2)(A): Debt Arising by False Pretenses, False Representation or Actual Fraud*

The Plaintiff's Complaint seeks a determination that the debt owed to it should be excepted from discharge under §523(a)(2)(A) as a debt obtained by false pretenses, a false representation or actual fraud.  11 U.S.C. §523(a)(2)(A) of the Bankruptcy Code

---

[43]  "Cross-motions for summary judgment will not, in and of themselves, warrant the granting of summary judgment unless one of the parties is entitled to judgment as a matter of law." *United States v. Bros. Enterprises, Inc.*, 2015 WL 4039848, at *4 (E.D. Tex., July 1, 2015)(*citing Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980)).

[44]  "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *John,* 757 F.2d at 705.

[45]  "A summary judgment non-movant who does not respond to the motion is relegated to [their] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F.Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (*citing Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)).

[46]  E.D. TEX. LOCAL R. CV–56(c).

provides that:

> a discharge under §727 of this title does not discharge an individual debtor
> from any debt for money, property, or services, . . . to the extent obtained
> by false pretenses, a false representation, or actual fraud, other than a
> statement respecting the debtor's or an insider's financial condition.

Section 523(a)(2)(A) encompasses similar but distinct causes of action. Though other circuits have applied a uniform standard to all § 523(a)(2)(A) actions,[47] the Fifth Circuit has distinguished the elements of "actual fraud" from those involving "false pretenses and false representations." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995). The distinction recognized by the Fifth Circuit appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event as opposed to a representation regarding a past or existing fact. *Bank of Louisiana v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir. 1991) ["In order . . . to be a false representation or false pretense under § 523(a)(2), the false representations and false pretenses [must] encompass statements that falsely purport to depict current or past facts. [A debtor's] promise . . . related to [a] future action [which does] not purport to

---

[47] *See, e.g., Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991); *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987). Though some bankruptcy courts outside of the Fifth Circuit have cited the decision of the United States Supreme Court in *Field v. Mans*, 516 U.S. 59 (1995), in support of their proposition that all of the §523(a)(2)(A) actions are governed by the elements for actual fraud, *see, e.g., AT&T Universal Card Services v. Ellingsworth (In re Ellingsworth)*, 212 B.R. 326 (Bankr. W.D. Mo. 1997); *AT& T Universal Card Services v. Alvi (In re Alvi)*, 191 B.R. 724 (Bankr. N.D. Ill. 1996); the Supreme Court in that case was actually distinguishing the language used in §523(a)(2)(A) from that utilized in §523(a)(2)(B) in order to determine the degree of reliance necessary above mere reliance in fact in order to exempt a debt from discharge under (a)(2)(A). Since the Supreme Court specifically refused to even apply their direct holding regarding the degree of reliance in actual fraud cases to cases of false pretense or false representation, 516 U.S. at 71, n. 8, the statement that the Court erased all distinctions between the three (a)(2)(A) actions strains credibility.

depict current or past fact . . . therefore cannot be defined as a false representation or a false pretense"].[48]  Since the purportedly false representations made by the Defendant in this case pertained to an existing fact *[i.e., that the property was being conveyed free of any lien or encumbrance]*, the Plaintiff's nondischargeability action is properly characterized as one based upon false representation or false pretenses, and cannot be properly characterized in this Circuit as an action based on actual fraud.

While "false pretenses" and a "false representation" both involve intentional conduct intended to create and foster a false impression, the distinction is that a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement.  *See FNFS, Ltd. v. Harwood (In re Harwood),* 404 B.R. 366, 389 (Bankr. E.D. Tex. 2007); *Wallace v. Davis (In re Davis)*, 377 B.R. 827, 834 (Bankr. E.D. Tex. 2007).   "In order for the court to deny discharge of a debt under section 523(a)(2)(A) on the basis that the debt was procured by false pretenses or a false representation, the plaintiff must prove by a preponderance of the evidence that the debtor made representations that were (1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party."  *Cardwell v. Gurley,* 2011 WL 6338813, at *6 (E.D. Tex., Dec. 19, 2011) (*citing RecoverEdge,* 44 F.3d at 1293).[49]

---

[48]  Though some in this circuit have rejected these parallel tests as a distinction without a difference and proceeded with a unitary approach to the problem, *see In re Melancon*, 223 B.R. 300, 308 (Bankr. M.D. La. 1998), this Court feels compelled to recognize and attempt to apply the distinction drawn by the circuit court.

[49]  A debt may also be declared nondischargeable if it was obtained by actual fraud.  To have a debt excepted from discharge pursuant to the "actual fraud" provision in § 523(a)(2)(A), an objecting

The degree of reliance required under §523(a)(2)(A) is actual and justifiable reliance. *Field v. Mans*, 516 U.S. 59, 70-71 (1995). "The 'actual reliance' standard requires little of a creditor, who must prove only that he in fact relied on representations of the debtor." *Manheim Automotive Financial Services, Inc. v. Hurst (In re Hurst)*, 337 B.R. 125, 134 (Bankr. N.D. Tex. 2005). Justifiable reliance does not require a plaintiff to demonstrate reasonableness nor does it impose a duty to investigate unless the falsity is readily apparent. "Whether a party justifiably relies on a misrepresentation is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff, not by an objective standard." *Guion v Sims (In re Sims)*, 479 B.R. 415, 425 (Bankr. S.D. Tex. 2012) (*citing Field v. Mans*, 516 U.S. at 71). "A party may justifiably rely on a misrepresentation even when he could have ascertained its falsity by conducting an investigation." *Sanford Institution for Savings v. Gallo*, 156 F.3d 71, 74 (1st Cir. 1998). Thus, "[j]ustifiable reliance requires evidence that the plaintiff actually relied on the false representations and that its reliance was justified under the circumstances." *Husky Intern. Elecs., Inc. v. Ritz (In re Ritz)*, 513 B.R. 510, 520 (S.D. Tex. 2014), *aff'd*, 787 F.3d 312 (5th Cir.), *cert. granted*, 136 S. Ct. 445 (2015).

The Defendant moves for judgment as a matter of law on the Plaintiff's claim

---

creditor must prove that (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained losses as a proximate result of the representations. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995), *as modified by the United States Supreme Court decision of Field v. Mans*, 516 U.S. 59 (1995) [regarding the proper standard of reliance].

under 11 U.S.C. §523(a)(2)(A) because the uncontested, and therefore admitted, material facts set forth in the Defendant's motion[50] preclude any recovery under that subsection. While the Defendant need only negate a single essential element of the Plaintiff's claim in order to prevail, the summary judgment evidence presented with regard to the Defendant's motion negates virtually every element required for a determination of nondischargeability under § 523(a)(2)(A).

It is uncontested that the 2004 sale of the Queens Property by the Defendant to Kishore C. and Chandrawatie Charles occurred under the supervision of Elite Settlement Agency, Inc., without any satisfaction of the mortgage held by Citibank against the Queens Property.  It is an admitted fact that, in closing that 2004 sales transaction, the Defendant relied upon the documents prepared by third parties and upon the title search conducted by Elite Settlement Agency, Inc.[51]  The uncontested summary judgment evidence further establishes that the Defendant was unaware that there was an error in the closing documents, that he merely signed the paperwork placed before him at the title company and that, as to any factual statements contained in those 2004 sale documents, the Defendant did not know that they were false because he believed the Citibank loan to be unsecured (which on its face was corroborated by the title search results)[52] and which

---

[50] *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir.2004); E.D. TEX. LOC. R. CV–56(c).

[51] See *Defendant's Statement of Undisputed Facts* ¶¶ I-K.

[52] It should be noted that, as to the Affidavit of Title, the Debtor made the representations "to the best of my knowledge."  Defendant's Ex. G.

is corroborated by the fact that the Defendant continued to pay installments on the

Citibank loan for four more years after the sale of the Queens Property.  The admitted

evidence clearly establishes that, even if the objectively false statements in the 2004

closing documents are properly attributed to him due to his execution of the documents,

he had no intention to deceive anyone.  Indeed, contrary to the allegations of the

complaint, the summary judgment evidence refutes the contention that the conveyance

was made by the Defendant for the purpose of fraud.  The existence of the mortgage was

not concealed nor was there any "private agreement" regarding the Citibank mortgage.  It

was a matter of public record.[53]  It was simply overlooked due to the Defendant's mistake

and a lack of diligence by the title examiner.  Further, the transaction did not relieve the

Defendant of his financial obligation to Citibank.  Thus, the summary judgment record is

devoid of any evidence supporting the Plaintiff's claim that the Defendant knew that the

representations regarding the encumbrances were false and that such statements were

intentionally made by the Defendant for the precise purpose of deceiving Mr. and Mrs.

Charles as the purchasers.  *General Elec. Capital Corp. v Acosta (In re Acosta)*, 406 F.3d

367, 372 (5th Cir. 2005) [holding that "an honest belief, even if unreasonable, that a

representation is true and that the speaker has information to justify it does not amount to

an intent to deceive."].   In the absence of any summary judgment evidence by which the

Plaintiff could contend that the Defendant made knowingly false statements to the

---

[53]  Defendant's Ex. A at ¶ 7 (Plaintiff's state court complaint) [The Citibank mortgage was "recorded on May 3, 2004 with the City Register of the City of New York at CRFN 2004000273646, securing real property located at 101-06 81st Street."].

Plaintiff or its predecessor in interest for the purpose of deception, the Defendant is entitled to judgment as a matter of law on the Plaintiff's § 523(a)(2)(A) claim.

The summary judgment evidence further establishes without dispute that there was no actual reliance by the Plaintiff upon any of the Defendant's representations made in 2004. Of course, the Plaintiff was not involved with the Queens Property at all during 2004. Thus, there could have been no direct reliance exhibited by the Plaintiff at the time the representations were made. To any extent that the Plaintiff intended to present proof of reliance engendered by any predecessor-in-interest, no such evidence has been tendered to the Court in that regard. Indeed, there is no evidence in the record that even Mr. and Mrs. Charles, as the actual purchasers of the Queens Property in 2004, relied on any representation by the Defendant regarding the existence of mortgages. Thus, the failure of the Plaintiff to present any credible evidence of actual reliance upon the Defendant's representations also preclude any nondischargeability determination in favor of the Plaintiff under § 523(a)(2)(A).

Finally, there is no summary judgment evidence to create a fact issue as to whether the Plaintiff sustained its alleged losses as a proximate result of the Defendant's representations. In this regard, the Plaintiff apparently wishes to ignore the fact that there were two relevant transactions in this chain of title and that the Defendant had nothing to do with any aspect of the second sales transaction which occurred in 2006. It is the second sales transaction which is the operative failure which proximately caused any loss which may have been suffered by the Plaintiff since it was the Plaintiff's agent who failed

-19-

to ensure that the Citibank mortgage was satisfied from the sales proceeds in the second

sales transaction, despite apparent actual knowledge of the Citibank mortgage, and it was

the Plaintiff's agent who obligated the Plaintiff through the issuance of a title insurance

policy for the benefit of Hadi & Kahn to defend the legitimacy of the title to the Queens

Property without supplying the due diligence necessary to ensure that, as of the time of

the second conveyance, the property was being conveyed to the Plaintiff's insureds free

and clear of liens and encumbrances.  In other words, the summary judgment evidence

establishes that the duty imposed upon the Plaintiff to satisfy the Citibank debt was not

caused by any false statement of the Defendant, or any reliance of the Plaintiff thereon,

but rather that the duty to respond to the existence of the Citibank mortgage was

contractually imposed upon the Plaintiff due to the negligence of its own agent.

> As one court has concisely stated,

> If the damages giving rise to the judgment proximately arose from some
> other cause than the misrepresentation, the debt can not be deemed to be
> one for property obtained by fraud. . . .  Only debts proximately arising
> from the obtaining of property by fraud are nondischargeable under
> §523(a)(2)(A).  *United States v. Spicer,* 57 F.3d 1152, 1157 (D.C. Cir.
> 1995), *cert. denied,* 516 U.S. 1043, 116 S.Ct. 701, 133 L.Ed.2d 658 (1996).
> It is not enough to show that false representations were made; [the plaintiff]
> must also show that her damage ***flowed directly*** from the
> misrepresentations.  *McCrory v. Spigel (In re Spigel),* 260 F.3d 27 (1st Cir.
> 2001). . . .  Proximate causation—loss or damage to the creditor "as a
> proximate result of" the debtor's misrepresentation—is an element that must
> be proved in order to establish nondischargeability under § 523(a)(2)(A).

*Willcox v. Carpenter (In re Carpenter)*, 453 B.R. 1, 7 (Bankr. D.D.C. 2011) (emphasis

added).  The lack of any summary judgment evidence supporting the claim that the

damages suffered by the Plaintiff flowed directly from the Plaintiff's actual reliance on

the representations made by the Defendant in 2004 further precludes any determination in

favor of the Plaintiff that any debt otherwise owed to it by the Defendant should be

declared nondischargeable under § 523(a)(2)(A).

As the Supreme Court has succinctly stated, "[i]n our view, the plain language of

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery

and upon motion, against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial."  *Celotex*, 477 U.S. at 322.  Because the Plaintiff has failed to

present summary judgment evidence necessary to sustain a finding in its favor on

virtually every element of a § 523(a)(2)(A) claim, summary judgment must be rendered

for the Defendant.

## Conclusion

Accordingly, upon due consideration of the pleadings, the proper summary

judgment evidence submitted, the material facts admitted to exist under Fed. R. Bankr. P.

56 and E.D. TEX. LOCAL R. CV–56(c), the relevant legal authorities and for the reasons

set forth herein, the Court concludes that there is no genuine issue as to any material fact

and that the Defendant is entitled to judgment as a matter of law.  Accordingly, the Court

concludes that the motion for summary judgment filed by the Defendant, Suresh

Koosyial, in the above-referenced adversary proceeding should be granted, such that the

Defendant is entitled to a summary judgment that the relief sought by the complaint filed by the Plaintiff, Commonwealth Land Title Insurance Company, pursuant to 11 U.S.C. §523(a)(2)(A), must be denied.  An appropriate order will be entered which is consistent with this opinion.

Signed on 01/08/2016

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE